Coös,
May 1, 1917.

### JAMES BERNARD *v*. WHITEFIELD TANNING COMPANY.

Whether the infection of the cattle of a riparian owner with anthrax germs was the result of the pollution of the stream by refuse from a tannery when operated by the defendants was properly submitted to the jury.

In such case, the defendants having tanned only imported hides, their reliance upon the government's inspection and disinfection thereof to destroy the germs was relevant to the issue of the defendants' due care in discharging the refuse into the stream.

And no right being claimed by the defendants to put anthrax germs into the stream but only the right to turn thereinto the refuse of their tannery provided they exercised due care to exclude anthrax germs, and no damage having been caused except by anthrax, the question is, immaterial whether turning the general waste into the stream was reasonable or not and the only issue to be submitted is, whether the presence of anthrax in the stream was due to the defendants' fault.

CASE, for the recovery of damages to real and personal property occasioned ·by the pollution of John's river in Dalton, by anthrax germs from the defendants' tannery located on the river at Whitefield. Trial by jury and verdict for the plaintiff.

Exceptions were taken by the defendants to the exclusion of evidence, to the charge of the court, and· to the denial of the defendants' motion for a directed verdict. Transferred from the April term, 1916, of the superior court by *Chamberlin, J.* The facts sufficiently appear in the opinion.

*Goss & James* and *E. M. Bowker* (*Mr. Goss* and *Mr. Bowker* orally), for the plaintiff.

*Drew, Shurtleff, Morris & Oakes* (*Mr. Morris* orally), for the defendants.

PLUMMER, J. The defendants in support of their motion for a directed verdict, contend that the evidence of the plaintiff was not sufficient to warrant the verdict, because it could not be found on the evidence that the anthrax germs, which caused the damage to the plaintiff, came from the tannery while operated by them. The plaintiff owns and carries on a farm of one hundred acres situated on the northeast side of John's river in Dalton about five miles below the defendants' tannery. Thirty acres of the farm is tillage, and the remainder is pasture and brush land. The building in which the tannery is located is owned by the town of Whitefield, and was first occupied and used as a tannery for several years by Bernard & Son, and following them Obendorff & Adler operated a tannery therein from July or August, 1914, to April, 1915. The defendants took possession in May, 1915, and began the operation of the tannery May 15, 1915. There is considerable water used in the various processes of tanning the hides, and all the waste runs into a sewer, which empties into John's river. Care is taken to save all the trimmings, fleshings and hair from the hides, which by custom belong to the defendants, but some of the hair is washed into the sewer. There was evidence that the tannery was kept in a clean condition. All the hides tanned by the defendants previous to the bringing of this suit, August 16, 1915, were foreign hides. The first hides tanned were five hundred from South America, which were tanned May 15, 16, 17 and 18. The next hides were forty-seven known as rangoons, from India, which were tanned May 23. On June 10 the defendants received 1,000 China hides for tanning, and, from then to the bringing of this action, the tannery or some part of it was in continuous operation tanning these China hides. Anthrax is prevalent in China and many foreign countries. Under government regulations, if hides imported from Argentine are accompanied by a certificate of the American consul, stating that the animals from which the hides were taken were killed in abattoirs under government inspection, they are admitted. But if hides are imported from China, in order to be admitted, they must be accompanied by a certificate sworn to by the American consul, stating

that they have been immersed for at least thirty minutes in a one to one thousand solution of bichloride of mercury, which is effective to kill both germs and spores. If such hides arrive here without the proper certificate, a government inspector sees that they receive the required immersion before they can be tanned. It appeared that anthrax germs in the spore form are very difficult to destroy, resisting drying, high temperatures and freezing; and that damp ground and muck holes furnish the best soil to promote the growth of the spores, and when such ground becomes infected it is likely to remain so for many years. There was evidence that the predecessors of the defendants in the tannery tanned domestic, country-gathered hides from the west and southwest, and that anthrax is more or less prevalent in the southern states in this country, and particularly in the Mississippi valley. The defendants urge that inasmuch as the evidence shows that the hides which they tanned before this suit was brought were all foreign hides admitted under government regulations, that it is very improbable that anthrax germs came from the tannery while operated by them, and that it is more probable, considering the ability of the germs to live in the soil, that the germs which did the injury came from the tannery when operated by those who preceded them, who tanned country-gathered hides, and, therefore, that the jury could not find that they caused the pollution of the stream. This contention cannot be sustained. Whatever may be said in support of the defendants' position, it cannot be held as a matter of law that the jury were not justified in finding that the anthrax germs that killed the plaintiff's cows and inoculated his land came from the tannery in the summer of 1915. Previous to that summer the occupants of the plaintiff's farm had never had any trouble from cattle dying, and cattle did not suffer any ill effects from drinking the river water, when Bernard & Son and Obendorff & Adler were operating the tannery. Between the 5th and 10th of July, 1915, shortly before four of the plaintiff's cows died of anthrax, the water in John's river rose, due to heavy rains, and overflowed the plaintiff's low-lands in which his cows were pastured. And during the summer the water in the river had a strong odor and was filthy, and hair and pieces of fleshings were floating on the water. The plaintiff had five cows die of anthrax in 1915. The four above stated died in July, and one died in December that had got out of the plaintiff's yard, and wandered down onto the low-lands and to the river. Some fifteen cattle along the course of John's river below the tannery contracted the disease of anthrax

in the year 1915.   The first creature died of it on June 22.   There was no outbreak of the disease prior to that time.   There were no known cases of the disease except on farms along the river below the tannery, and at places where meadow hay cut on the John's river intervale was being fed.   The evidence disclosed that Amos Brown had cows taken sick with anthrax that were fed with hay that was cut in 1915 on a meadow, below the tannery, through which the river flows.   Washings from this hay upon examination showed anthrax germs.   An employee of the defendants testified that about the last of August or the first of September, 1915, he had a swelling on his neck starting with a pimple, that he went to a hospital, had it cut out, and the physician who did it sent the tissue to the state bacteriologist at Concord, who found that it contained anthrax germs.   The evidence above referred to is sufficient to warrant the finding of the jury that the anthrax which destroyed the plaintiff's property came from the defendants' tannery in the summer of 1915.

The evidence offered by the defendants tending to show that government inspection and disinfection of foreign hides was effectual to destroy anthrax germs and that the defendants in the management of their business relied upon such inspection and disinfection (which was excluded subject to exception) was competent and should have been admitted.   It bore directly upon the question whether the pollution of the stream by anthrax germs was due to the defendants' want of care, which was one issue submitted to the jury.   This error destroys the verdict.

The gist of the plaintiff's claim was that the defendants exercised their rights of ownership of the tannery in an unreasonable manner and thereby caused the plaintiff's injury, or, stated more specifically, that it was unreasonable for them to put anthrax germs into the water, which was turned or allowed to run into the river and which poisoned the plaintiff's cattle.   The claim was made at the trial (1) that the defendants had no right to empty the refuse from the tannery into the river and (2) they could not in the reasonable exercise of their rights as owners of the premises put anthrax germs into the water or allow it to be polluted in that way.   But the defendants did not claim the right by virtue of their ownership of the tannery premises to put poisonous germs into the river.   The right the defendants did claim was to turn the general refuse of the tannery into the stream and they admitted their obligation to exercise due care to keep such refuse free from anthrax germs.   There was no evidence the defendants knew the refuse carried such germs.   In

order to charge an owner of real estate with an unreasonable use of it, it must appear he had actual knowledge of its alleged use. The question whether the use of the stream as a sewer for the tannery was a reasonable exercise of the defendants' riparian right was submitted to the jury but no claim of any damage from such use was made except that occasioned by anthrax. As the defendants did not claim the right to put anthrax into the stream, the injury the plaintiff alleged arose not from a right which the defendants claimed but from their alleged negligence in the exercise of the right claimed by them. Whether they had the right to turn the refuse of the factory into the stream or not, as the damage complained of did not result from the exercise of that right, it is immaterial whether turning the general waste into the stream was reasonable or not. The submission of that issue to the jury might tend to confuse them and distract their attention from the real issue whether the presence of the anthrax in the stream was due to the defendants' fault. This issue was submitted as a part of the question of reasonable use, but at another trial the issue of negligence only should be submitted, unless the plaintiff proves damage from the exercise of the right which the defendants claim as appurtenant to their riparian ownership.

*Exception sustained: new trial granted.*

All concurred.